Statement of the case.

WILLIAM J. McFARLAND ET AL. v. ROBERT GOINS.

[50 South. 493.]

CONSTITUTIONAL LAW. *Class legislation. Agricultural high school for white youth. Laws* 1908, *ch.* 102, *p.* 92. *Constitution United States, XIV Amendment. Equal protection of law.*

Laws 1908, ch. 102, p. 92, authorizing a county to establish one agricultural high school for instruction of its white youth alone, and to support it by a tax on all the taxable property in the county, is violative of the Fourteenth Amendment of the Constitution of the United States, its necessary effect being to abridge the privileges or immunities of a class of citizens, or deny them the equal protection of the laws.

FROM the chancery court of Jasper county.

HON. SAMUEL WHITMAN, Jr., Chancellor.

Goins, appellee, a negro, was complainant in the court below; McFarland, tax collector, and Thigpen, treasurer, respectively, of Jasper county, appellants, were defendants there. From a decree overruling the defendants' demurrer to complainant's bill, the defendants appealed to the supreme court.

Goins, the appellee, enjoined the appellants, tax collector and treasurer respectively of Jasper county, from collecting a special tax levied by the board of supervisors for the support and maintenance of an agricultural high school established in the county under Laws 1908, ch. 102, p. 92, authorizing a county to establish an agricultural high school for instruction of its white youth and to support the school by a tax on the taxable property in the county. The bill of complaint alleged that appellee is a resident citizen and freeholder of the county, a negro, having children of educable age, and that the law in question, under which the school was established, is unconstitutional in that it abridged the privileges and immunities of himself and other citizens of the county and state of his race and denied to himself and them the equal protection of the law.

*Thigpen & McFarland* and *Deavours & Shands,* for appellants.

The appellee, although a freeholder and tax payer of the county, has not as yet paid to the county tax collector any taxes which may be used, under the new statute under consideration, toward the establishment of an agricultural high school. Can he, then, institute this proceeding and maintain suit successfully against the county tax collector and county treasurer? It is a serious matter to enjoin a county treasurer from paying out county funds.

But conceding that he, as a tax payer of the county, can legally institute this suit, is he entitled to any relief? It is a well settled doctrine that in the administration of our school law a great deal must be left to the discretion of the school authorities as to the manner in which they will administer the law in order to bring about the best results under our system of public schools. If, in a specified town, there were no white children under the age of sixteen years, and all such children were sufficiently mentally advanced to attend a grammar school; and in the same town there were no negro children over seven years of age, but a large number under such age, mentally prepared to attend only a school of primary grade; could it reasonably be contended that it would be unconstitutional for the public school authorities in control in such municipality to establish a grammar school for the white children of the town and only a primary school for the negro children of the town? While it is the purpose of the public school system to afford to the children of educable age equal facilities, no court has ever held that the duty devolves upon the school authorities to furnish to all children identical advantages.

The appellee does not allege in his bill of complaint that there are not schools for the negro children in Jasper county suitable to their needs and proper for the grades of their mental advancements and proficiencies. He does not pretend to assert that .there are not negro public schools in the community where he

and his family live which his children can easily and habitually attend. If it be granted that he and his family have proper school facilities, he should be entitled to no relief. The mere fact that the statute in question affords certain school opportunities to children of the white race cannot wrongfully affect him if it be conceded that his own children, and other negro children of the county, have proper and ample school facilities in the way of attendance at public schools for their own color. One who invokes the jurisdiction of equity to arrest the performance of a duty imposed by the legislature upon a public officer, must show conclusively not only that the act about to be performed is unconstitutional, but that he will be directly injured by it. *Burnham v. Sumner,* 50 Miss. 517; *Virden v. Bowers,* 55 Miss. 1; *Gibbs v. Green,* 54 Miss. 592; *Beck v. Allen,* 58 Miss. 143. An agricultural high school established in any county is either a part of the system of free public schools provided for by article 8, of our state constitution, or such a school is not a part of that system. But the statute in question is constitutional, whether the school established under it be considered as a part of the public school system or as independent of the public school system.

Suppose we consider such school, when established, to be a part of the public school system. Then it follows that the only section of our state constitution which such statute can possibly violate is section 201, providing that it shall be the duty of the legislature to encourage by all suitable means the promotion of intellectual, scientific, moral and agricultural improvement, by establishing a uniform system of free public schools, by taxation or otherwise, for all children between the ages of five and twenty-one years, and as soon as practicable to establish schools of higher grades. But, in the administration of the law pertaining to our public school system, the widest discretion must be allowed to the authorities upon whom devolve the duty of administering the law so as to achieve the best results. The "uniform system of free public schools" mentioned in sec-

tion 201 must not be interpreted to mean one where the facilities afforded to all the children of educable age, who are the beneficiaries of the system, shall be identical advantages or facilities. Equality of facilities means the providing at public expense of opportunity to attend a school established by the state suitable to the grade of advancement of the pupil who attends; and, accordingly, the providing of schools of different grades to meet the necessities of different students will not be held to be an act violative of our state constitution.

If, now, we consider such agricultural high school, when established, to be not a part of the public school system, it yet follows that the statute is not unconstitutional. It is true that the state constitution, sec. 201, provides that it shall be the duty of the legislature "as soon as practicable to establish schools of higher grade," but evidently it was contemplated by such provision of this constitutional section that if schools of higher grades were established as a part of the public school system, their establishment would be uniform over the state. A system could hardly be said to be uniform which was in operation in perhaps only twelve of the more than seventy counties of our state. And if such a school is not a part of the public school system, then the legislature has a right to appropriate money for that purpose, not because the school is a part of the public school system, but because, not being a part of such system, it is yet a worthy and deserving object entitled to favor and support at the hands of the state. The matter of the establishment of an agricultural high school in each county is not made mandatory by the statute, as doubtless would be done if the institution fell within the meaning of the phrase, "schools of higher grade," but its establishment is left to be determined by the judgment of the county board of education or of the people themselves in each county.

Under sec. 201 of our constitution, the electors of the county are not prohibited from establishing schools of higher grade

independently of the public school scheme.   *Otken v. Lamken,* 56 Miss. 758; *Chrisman v. Brookhaven,* 70 Miss. 477.

A case very similar to the case at bar has been before the supreme court of the United States for decision, having been carried there on the theory that the action of a county board of education on the particular facts of that case was in viola-- tion of the fourteenth amendment to the constitution of the United States.   We refer to *Cummings v. County Board of Education,* 175 U. S. 528, 44 L. Ed. 262.   It was shown, in the case cited, that there were sixty negro children entitled to attend a high school, and three hundred negro children entitled to attend an intermediate school; that the school board, in the exercise of its discretion, not having money enough to maintain both schools, ceased to extend support to the high school for negro children but maintained an intermediate school for the three hundred negro children; and at the same time continued to maintain a high school for white children.   It was held by this high tribunal that there was no denial to colored persons of the equal protection of the law or equal privileges of citizens of the United States.

*Sharbrough & Corley,* for appellee.

No state can deny to any citizen of the United States within its jurisdiction the equal protection of the law, or make or enforce any law abridging the privileges and immunities of such citizen.   Any legislation which discriminates against any particular race or class of persons must be held to be in violation of the Constitution of the United States.   Since the adoption of the Fourteenth Amendment to such Constitution, any public school system devised by our state must make equal provision for the education of all children of school age, irrespective of race or color.

The classification of pupils on the basis of race or color, and their education in separate public schools, involve ques-

tions of domestic policy which are within the discretion and control of state legislation, but only so long as the facilities and accommodations provided for all pupils, children of the citizens of our state, are substantially equal. *Clement v. Everest,* 29 Mich. 19; 4th Edition High on Injunctions, pages 1312 to 1316, vol. 2; *Harney v. Indianapolis R. Co.,* 32 Ind. 244; 8 Cyc. 800; *Rathborne v. Wirth,* 6 N. Y. App. Div. 277; 40 N. Y. Suppl. 535, 74 N. Y. State, 962; 7 Cyc. 166, 167; *Pluitt v. Commissioners of Gaston County,* 55 Am. Rep. 638; *Cory v. Carter,* 17 Am. Rep. 738.

The statute in question is certainly in contravention of the Fourteenth Amendment to the United States Constitution. The first section of the statute provides for the establishment of an agricultural high school for the purpose of "instructing the white youth of the county" in high school branches. None except youth of the white race can attend such school. The second section of the statute provides that the county board of supervisors shall have the power to levy a tax on the taxable property of every body in the county for the support of such school established in the county. Accordingly, while only children of the white race can attend such school, the property of the black race as well as the property of the white race can be taxed, under the provisions of the second section of the statute, to support and maintain the school. It is accordingly self evident that this will abridge the privileges and immunity of the negro citizens of Jasper county. *Strauder v. West Virginia,* 100 U. S. 303, 25 L. Ed. 664; *Claybrook et al. v. City of Owensboro,* 16 Fed. 297; *State v. McCann,* 21 Ohio St. 210; *Ward v. Flood,* 48 Cal. 51; *Farrow v. State,* 91 Miss. 509.

*Mayes & Longstreet,* on the same side.

The underlying thought of appellee's bill of complaint is that under the Constitution of the State of Mississippi and of the United States, the white race and the colored race are equal,

in so far as their legal rights are concerned, before the law; and that the state legislature had no right to impose a school tax in support of a class of institutions from which, by the expressed enactment of the law itself, the colored race was to be excluded.

The appellee's right to institute this suit is clearly apparent. He is shown in the bill of complaint to be a resident citizen and property holder of Jasper county. As such he is a tax payer. Code 1906, § 533, provides that the chancery court shall have jurisdiction of suits by one or more tax payers in any county, city, town, or village, to restrain the collection of any taxes levied or attempted to be collected without authority of law.

It is true that the bill of complaint does not recite that there are any negro children in Jasper county who would be qualified to attend such a school as is contemplated by the statute in question; and that the bill fails to show that appellee has any children qualified to attend such school. But the silence of the bill as to these matters in no way limits the jurisdiction of the chancery court to entertain this suit. The question of the constitutionality of this statute, which is state-wide in its operation, is not to be determined by the local conditions in Jasper county. Any citizen of this state, whose property is about to be made subject to taxation to help support a school established under this statute, has a legal right to attack its constitutionality.

We, of course, do not contend that it is not within the power of the state to enact laws providing separate schools for the two races, or providing separate accommodations and utilities, of like degree, for the two races. *Berea College v. Kentucky,* 211 U. S. 45, 53 L. Ed. 81. But this statute now under consideration creates a public school for white children only and imposes taxes on the taxable property of citizens of the negro race as well as on the taxable property of citizens of the white race.

No agricultural high school for negro children can be established or maintained under the statute. The authorities cited by opposing counsel are not in point.

Mayes, J. delivered the opinion of the court.

In 1908 the legislature passed an act, entitled "An act to provide for the establishment of a county agricultural high school," etc. This act is chapter 102, p. 92, Laws 1908, and by section 1 it is provided "that it shall be lawful for the county school board of any county in the state to establish one agricultural high school in the county for the purpose of instructing the white youth of the county in high school branches,. theoretical and practical agriculture, and in such other branches as the board hereinafter provided for may make a part of its curriculum." By section 2 of this act it is further provided that the board of supervisors of any county, where an agricultural high school has been established by the county school board, shall have the power, if necessary, to levy a tax on the taxable property at the time the annual tax levy is made for the support and maintenance of the said school, etc.

Section 1 of article 14 of the amendments to the Constitution of the United States makes "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, citizens of the United States and of the state wherein they reside," and further provides that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, * * * nor deny to any person within its jurisdiction the equal protection of the laws." When the act in question is read in the light of the fourteenth amendment to the Constitution of the United States, its violation of same is too plain for argument. By section 1 of the act of 1908 provision is made for the establishment of an agricultural high school for the white youth only, and by section 2 of the same act this school is to be sustained by taxa-

tion on all "taxable property"—that is, by taxes raised on the property of both white and black for the use of the white citizen only. We are not to be understood as holding that a statute could be passed which provided that the revenue raised for the support of the school could be raised by taxation only on the property of the white citizen for the white school and not be in violation of this provision of the Constitution of the United States; but we cite the method of taxation to emphasize the inequality of the law.

If the fourteenth amendment of the Constitution of the United States means anything at all, it certainly means that all citizens of the United States shall stand equal before the law, and that no special privilege or benefits shall be given to one class of citizens to the exclusion of the other as a matter of statutory enactment. This does not mean that the legislature of the state cannot pass laws the object of which is to prevent a social commingling of the races; nor does it mean that an act of a legislature which in its administrative effect fails to work out an exact proportion of benefit to the two races is in conflict with this amendment to the United States Constitution; but a law is only void when its object or necessary effect is to abridge the privileges or immunities of a certain class of citizens, or deny them the equal protection of the laws. In the case of *Plessy v. Ferguson,* 163 U. S. 537, 16 Sup. Ct. 1138, 41 L. Ed. 256, and *West Chester & Phila. Ry. Co. v. Miles,* 55 Pa. 209, 93 Am. Dec. 744, it was held that a state statute which provided separate railway carriages for the white and colored races was not in violation of the fourteenth amendment of the federal Constitution; and in the case of *Berea College v. Kentucky,* 211 U. S. 45, 29 Sup. Ct. 33, 53 L. Ed. 81, the supreme court of the United States sustained a statute of Kentucky which provided for the separation of the races in the public schools.

Civil rights do not mean social rights, and the courts, both state and federal, recognizing this, and further realizing that no

man-made law can force this condition of affairs, have steadily upheld all laws that merely had for their object this disassociation of the two races as promotive of the peace and welfare of all the citizens. See citations 175 U. S. 528, 20 Sup. Ct. 197, 44 L. Ed. 262. But, while this is true, no decision of any federal or state tribunal has yet been called to our attention, nor do we think it will be so long as the fourteenth amendment is in existence, upholding a statute taxing the property of the two races for the benefit of the one.

Counsel for appellant cite the case of *Cummings v. Board of Education,* 175 U. S. 528, 20 Sup. Ct. 197, 44 L. Ed. 262, as an authority sustaining the validity of the act in question; but this case is not at all in point. In the case just cited it was shown that the board of education charged with the administration of the school laws maintained a primary school for white and colored children, and in addition to this also maintained a high school for the white children, discontinuing the high school for the colored children for the reason that the available funds were needed for primary schools for a much larger number of colored children than attended the high school. In short, the administrative school board was making the best application of the funds on hand in order to bring about the greatest service, and the United States supreme court held that in so doing they were not denying the colored children the equal protection of the law, nor any privilege or immunity guaranteed by the fourteenth amendment. But in the case now before the court the very law itself creates the school for white children only, and imposes taxes on all taxable property for the purpose of raising revenue for the support of this school, and by its very terms excludes the idea that, whatever conditions may exist, any such colored school can be created. Code 1906, § 533, leaves no doubt as to the complainant's right to file this suit, and we think that the bill states a perfect case.

The chancellor having overruled the demurrer to complainant's bill, the decree is *affirmed* and cause *remanded.*