TRUSTEES OF WALTON SCHOOL ET AL. v. BOARD OF
SUPERVISORS OF COVINGTON COUNTY.

[75 South. 833, Division B.]

1. CONSTITUTIONAL LAW.   *Schools and school districts.   Race legislation.*

   Act 1910, chapter 124, as amended by Act 1912, chapter 255, in reference to consolidated schools, is not in conflict with the state or federal constitution, because under the law the board has the same power to create consolidated schools for the colored race that it has for the white race.

2. SCHOOLS AND SCHOOL DISTRICTS.   *Consolidated school districts.*

   A consolidated school district is simply a common school district where two or more existing schools have been consolidated into one single school district.

3. CONSTITUTIONAL LAW.   *Class legislation.   Pleading.   Sufficiency.*

   A bill for an injunction against the issuance of bonds for a consolidated school district is insufficient to present the question whether the order creating the consolidated school was invalid because it did not provide for the maintenance of a colored school, where it did not allege, first, that there was sufficient colored children to maintain a public school and, second, where it did not allege that there was no colored school located in the territory comprising the district whereat the colored children may be educated in the same subjects taught in the consolidated school.

4. SCHOOLS AND SCHOOL DISTRICTS.   *Issue of bonds.   Submission to voters.   Petition.   Sufficiency.*

   A petition signed by twenty per cent of the qualified voters of the district requesting submission to the voters for their rejection or approval of the question of issuing bonds for the purchase of building a consolidated school, was insufficient, such petition not being against the issuance of the bonds by twenty per cent of the voters as required by law.

5. SCHOOLS AND SCHOOL DISTRICTS.   *Bonds.   Petition for submission to voters.   Amendment.*

   The board of supervisors was right in refusing to allow an amendment to a petition to submit to the voters, the question of issuing bonds for a consolidated school, after the first Monday in July and in the absence of the petitioners, since such petition could not be amended without the consent of the parties who

signed it and where it did not appear that twenty per cent of the qualified electors and tax payers of the district consented to such amendment.

APPEAL from the chancery court of Covington county. HON. D. M. RUSSELL, Chancellor.

Bill by Trustees of Walton School and others against the Board of Supervisors of Covington County and others. Bill dismissed and petitioners appeal.

The facts are fully stated in the opinion of the court.

*W. U. Corley,* for appellants.

To begin with, the writer begs the indulgence of the court to say, that this case has been hotly contested by both sides, and practically involves every legal point of our new modern school laws. Chapter 124 of the Acts of 1910, is "an act to provide for the transportation of pupils when schools are consolidated." This is the only act found in our law that authorizes school boards to consolidate schools, of a county, unless we turn to section 4512 of the Code of 1906, and by so doing, we may, by implication, infer such a power to them, the legality of such an inference we seriously doubt.

Chapter 255 of the Acts of 1912, is an act to "amend House Bill No. 58 of chapter 124 of the Laws of 1910, being an act to provide for the transportation of pupils in consolidated school districts." Sections 1 and 2 are practically the same as chapter 124 of the Acts of 1910. The legislature then went beyond its authority, and made the whole act void by adding section 3 which provides the means, or a way, for issuing bonds to build school houses, and to equip same, and further to provide a means of special taxation sufficient to pay for fuel, transportation wagons, incidental expenses and to erect and repair school buildings. It went further in section 4, and provided for the creation of graded schools. This act is therefore in violation of section 60

of the Constitution of Mississippi, because it changed
the original purpose, of the original act for the trans-
portation of pupils, to an act for issuing school bonds
and creating a system of school tax and the creation of
Graded Schools.   The legislature recognized the inva-
lidity of the acts referred to, and on the 28th of March,
1914, attempted to pass an Act, which would be a "cur-
ative statute' and is known as chapter 182 of the Acts
of 1914.   This act is wholly void and unconstitutional
as a curative statute, so far as future contingencies are
concerned, for it is wholly a retroactive act.   It does not
live up to its title, but the body of the act treats of the
past only.   The same legislature, on the same date at-
tempted further to right their wrong and passed Sen-
ate Bill No. 573, or chapter 196 of the Acts of 1914,
which purports to be an act to amend section 3, of the
chapter 255, of the Acts of 1912, that which is void can-
not be amended so as to make it valid.   None of the
titles comply with section 71 of the Constitution of Mis-
sissippi and must fall because section 71 requiring the
title of acts to indicate clearly the subject-matter of the
proposed legislation is mandatory.   *Sample* v. *Verona,*
94 Miss. 264;  *Board of Levy Com'rs* v. *Royal Ins. Co.,*
96 Miss. 832.

In presenting the unconstitutionality of these acts we
are not unmindful of the case of *Bufkin* v. *Mitchell,* de-
cided by this court, December 8, 1913, and reported on
63 So. page 458.   In this case this court decided that
this act was valid, but it so decided on an entirely dif-
ferent proposition that of the question of uniformity.

"A supplemental, or amending act should indicate
clearly in its title the act amended."   36 Cyc. 1029, and
citations thereunder.   Statutes, which are not a mere
nullity of or which have not been entirely abrogated, or
repealed by implication may be amended, and an act
that is void cannot be amended.   36 Cyc. 1055.   A stat-
ute, or its amendment, should be sufficiently comprehen-

sive in its title and scope, so as not to be misleading in what it says, or omits to say. 109 Mo. 1. We submit that none of the titles are sufficient.

We come next to the most vital point in this case. Did the board of supervisors abuse their discretion, and act within the scope of their authority? We contend first that the petition of the adult· tax payers filed on the third day of July, 1916, was sufficient, and that it was filed in time, and that to ignore it by a board of supervisors constitutes fraud itself, but before getting to this point, we submit for argument's sake that if the petition was inartfully drawn that it was a subject of amendment, and the evidence shows ample authority for the amendment, and ample request to make the amendment. Sections 300 and 301 practically gives the board of supervisors all powers conferred on any other court; section 304 confers on them all the powers conferred on a justice of the peace. Section 2728 of the Code confers upon justices of the peace all the powers incident to any court of record. Section 593 specially provides for the liberal allowance of amendments in chancery court.

Section 775 specially provides full·power for the circuit court to make any amendments in pleadings before verdict. It is unquestionably true that the board of supervisors, while in session, constitute a lawful court, and so constituted, they must be there for some purpose other than to hear and determine matters coming before them, within their lawful jurisdiction. In this case we have eighty adult tax-payers, with thirty-eight of them constituting twenty per cent of such adult tax-payers as required by section 3419 of the Code of 1906, before issuing bonds.

We submit then, that with the petition worded as it was, whether amended or not, or whether amendable or not, that the relief prayed for should have been granted. In the case of *De Loach* v. *Newton,* 134 Ga.

739, an utterly void petition was filed, and the officers desiring to do the right thing by their constituents, ordered an election, and the election was contested, and the supreme court of that state said, that the election was not void, and they went even further in that case and filed an amended petition, and still the election was upheld.   Then if the election could be held, and confirmed from a negative view of the case it was certainly the duty of the court to give the affirmative relief, or *vice versa.*

In the case of *Shields* v. *Pyles,* 99 N. E. 742, the court specifically held that all of the jurisdictional facts need not appear in the petition, and it further held that the jurisdictional facts not contained in the petition could be shown by evidence, and this is the law. *Aetna* v. *Jones,* 173 Ind. 149; *Hall* v. *McDonald,* 171 Ind. 9; *Conaway* v. *Ascherman,* 94 Ind. 187; *Watson* v. *Crowsoe,* 93 Ind. 220; *Brown* v. *McCord,* 20 Ind. 270.

In the case of *Pinney* v. *Powers,* 104 N. E. 857, an amended petition was filed, and that righteously upheld, ask leave of court to amend.  A petition may be amended generally, or an order to state facts which are necessary to form the foundation for an order.   16 Enc. Pl. & Pr. 517.

We submit again that under all the facts as shown by the orders, record evidence, and oral testimony, that equal rights and privileges cannot be granted in this instance.   The word liberty as employed in the Constitution, guaranteeing the liberty of citizens, implies the right to follow any of the ordinary callings of life, without being tràmmeled.   *Wilby* v. *State,* 93 Miss. 767. Again:   "The thirteenth, fourteenth and fifteenth amendments to the Federal Constitution were intended to put the questions of slavery, citizenship and suffrage of colored persons forever at rest, while securing equality of rights; and these amendments are prohibitory upon the state against the denial or abridgment of

such rights." *Donald* v. *State,* 48 Miss. 661. Likewise, an official order passed by an official board stands upon the same grounds. We submit therefore, even though we would admit for argument's sake, that the acts heretofore referred to are valid that the acts of the board are void, unlawful and unconstitutional, for the reason that it abridges the right of 'the negro tax-payer, within the district, no like school, being provided for them, the chancellor, having orally refused to permit evidence of this kind to be introduced, notwithstanding the fact that part of complainants, appellants here, were of the colored race. This court in the case of *McFarland* v. *Goins,* decided November 2, 1909, and reported in the 50th So. page 493, specifically held, that a like act authorizing a county to establish one agricultural High School for instruction of its white youth, and to support it by tax on all taxable property therein, contravenes Const., U. S. Amend. 14.

It has been contended that complainants have wholly failed to establish fraud on the part of the defendant. We do not think it necessary to prove that appellees were bribed, or paid for their votes, or voted in the hope of a reward, or promise. "Actual or positive fraud has been said to consist in circumventing, cheating or deceiving a person to his injury by any cunning deception, or artifice." This definition was accepted by Mr. Storey; yet constructive fraud has been said to be "an act which the law declares to be fraudulent, without inquiring into its motive." "Equity will always entertain jurisdiction to relieve from fraud, notwithstanding that the law would afford relief, either by action or defense, where such remedy would be doubtful, incomplete or otherwise inadequate." 16 Cyc. 83.

Fraud may be inferred from facts and circumstances. *Pope* v. *Andrews,* Sm. & M., Ch. 135. One is conclusively presumed to have intended fraud, if it necessarily and logically results from its conduct. *Hillard* v. *Cagle,*

46 Miss. 309.   Positive and express proof is not required of fraud, but circumstances affording strong presumption will be sufficient. *Parkhurst* v. *McGraw*, 24 Miss. 134, anything that throws light on the acts of the parties is competent. *Strong* v. *Hings*, 35 Miss. 201.

Now with the facts before us, that a petition was presented to the board of supervisors, asking for an election upon this matter, and were advised by the attorney for the board of supervisors that the petition was no petition.   Attorney for petitioners fully authorized and directed by his clients standing by him, asking leave to amend the petition, and the board of supervisors sitting in the capacity of a court listening to the argument of the counsels *pro* and *con,* and then lay the petition down, and issue an order stating in the order issuing the bonds that there was no petition filed, and no protest filed, or made, in the face of eighty-five men, and their employed attorney, protesting against it begging for relief, and begging for an election, and the member of the board of supervisors from the district, in which the bonds were to be issued stating the cause of his people, the intent of their petition, and telling them that his people were against it, and that they wanted an election, and that they were against the bond issue, and that was what the petition was for, and then to come up on the witness stand and in answer to their own attorney's questions who was also the employed attorney for the advocators of the school, and say that they didn't have the matter up formally, and in the next breath, on cross-examination, say that they were in regular session, and had up the matter of issuing bonds, and were listening to the argument of counsel for both sides, and all admitting except one, that a plea was made for the amendment and that they did not allow it; and still further when they were confronted with a petition carrying more than twenty per cent. of the adult tax-payers of the Seminary Consolidated School District, drawn by

this writer, and in exact compliance to the statute, and filed at the same time, and by the same attorney, and with the same clerk, shied out of the whole matter, and said they were not filed in time. At the same time, with their own attorney carrying around an official opinion of the attorney-general, addressed to one of their co-defendants that it was filed in time, and with the Weston v. Hancock County case before them, turned it all down, and without rhyme or reason placed a fifteen thousand dollar bond issue on the Sanford Consolidated School District, and a twenty-five thousand dollar bond issue on the Seminary Consolidated School District. The latter refusing to sell, because they admitted they were wrong when enjoined and quit, the former have been estopped from selling their bonds, because of the fact, in their eagerness to deliver their bonds and receive their money, before they could be enjoined, they issued fifteen thousand dollars worth of bonds and sold twenty-five thousand dollars. See pages 34 and 35 of the record. If all of this does not constitute fraud, we will have to admit that we do not know how to do it. The fiat of the chancellor shows that he apprehended danger by its concluding words. See page 11.

We submit that it was the duty of the chancellor to have permitted complainants to have developed their case, and that every allegation of the bill should have been covered by evidence, and that he erred in refusing to admit evidence about the meeting of the school board in executive session, and all of the facts charged in the bill, that complainant could have made proof of; that he erred in sustaining objections to the testimony of J. L. Lott.

*E. L. Dent,* for appellees.

Was there a petition signed by twenty per centum of the adult tax-payers of the Sandford Consolidated

School District within the time prescribed by law against the issuance of the fifteen thousand dollars bonds. In answering this question, I can do no better than cite and quote the law giving the board of supervisors the authority to issue such bonds, which law and authority is as follows:   Section 3419, of the Code of 1906.

"Before, providing for the issuance of any bonds, the board shall publish notice of the proposal to issue the same in a newspaper published in the municipality, or having a general circulation therein if none be there published, for three weeks next preceding; and if, within that time, twenty per centum of the adult tax-payers of the municipality shall petition against the issuance of the bonds, then the bonds shall not be issued unless authorized by a majority of the electors voting in an election to be ordered for that purpose."

Section 333, of the Code of 1906, prescribes what shall be done by the board of supervisors before the issuance of any bonds, which as will be seen is almost exactly like section 3419, *supra.*   Section 333.

To give a literal construction to the above statutes a petition signed by twenty per centum of the adult tax-payers of the district must be filed within the three weeks during the publication of the notice of the intention of the board of supervisors to issue the bonds, and this petition must be filed within the three weeks next preceding the meeting of the board, and the petition must contain the words against the issuance of the bonds. If the petition is not filed within the three weeks next preceding the meeting of the board and is not against the issuance of the bonds, the board of supervisors have no jurisdiction over the petition and have no authority to order an election. In other words there are an especial two precedent conditions that must be complied with before the board of supervisors can have any authority to order an election. One of these condi-

tions is that a petition must be filed during the publication of the notice to issue bonds and this notice must be published for three weeks next preceding the meeting of the board, or three weeks just before the board meets. Such a petition cannot be filed after the board meets, because if it could, it could not be within the three weeks next preceding the meeting of the board. It could not be plausibly contended that such a petition could be filed with the mayor and the board of aldermen after they had met, because the statute plainly says that the filing of the petition must precede the meeting of the board. If such a petition could be filed an hour after the board met, it could be filed a day after they met, or any time during the session if it should last a week, and the last thing before the adjournment of the week's session, such a petition could be filed, and if that could be done it occurs to your writer that it would plainly defeat the purpose, intention and wording of the statute.

The above construction is made clear by Chapter 149, of the Laws of 1910, Section 2 of said chapter. While chapter 149, Laws of 1910, has reference to the issuance of bonds for constructing and maintaining public roads, it can be seen that it has always been the purpose and intention of the legislature, if there should be a petition against the proposed bond issue, that such a petition should precede the meeting at which such board proposes to issue such bonds. The word precede means "to go before in the order of time; to occur first with the relation to anything."

The other precedent condition is that the petition must be against the issuance of the bonds. It would be reading the word "against" out of the statute for this court to hold the petition filed in this case asking for an election sufficient. The board of supervisors would be without jurisdiction to order an election, and it would be folly and a waste of time and money and defeat the very purpose and intention of the legislature for the

board of supervisors to have the authority to order an election when there was no information in the petition that any one of the petitioners were against the bond issue. The petition in this case asks only for an election, to determine whether or not the voters of the district would approve or reject the bond issue, the petition being "to submit same to the voters of said district, for their approval or rejection," the petitioners knew that this petition was insufficient, and also their lawyer knew that it was insufficient.

As to the question of amending the petition so as to conform to the statute was a controverted fact that the chancellor decided in favor of the appellees. Therefore the right to amend the petition so as to make it read against the bond issue is not necessary to be decided by this court. The record does not show that there was ever a petition of twenty per cent of the adult tax-payers of the district against the issuance of the bond.

I respectfully submit therefore, that there has never been a petition signed by twenty per cent of the adult tax-payers of the Sanford Consolidated School District against the issuance of the fifteen thousand dollar bonds; and that without such a petition it was mandatory on the board of supervisors to issue the bonds, as they had no authority to call for an election. *Purvis et al.* v. *Robinson Tax Collector et al.,* (No. 18239), 69 So. 673.

The able counsel for appellants attacks the constitutionality of chapter 124 of the Laws of 1910, and chapter 255, of the Laws of 1912, and chapter 196, of the Act of 1914, while the case of *Bufkin* v. *Mitchell,* in 63 So. 458, decide that these acts are constitutional. Chapter 180, of the Laws of 1916, the law under which the bonds were issued, is not attacked.

There being no evidence that a single one of the petitioners, the appellants here, are negroes; it would be a needless waste of time to attempt to answer the learned counsel's argument on the race question.

There was no appeal from the order of the board of supervisors issuing the bonds, and in the case of *Hinton* v. *Perry County,* reported in 84 Miss. 536, on this point this court held.

"It seems that Mr. Hinton was an earnest advocate of removal, and to the point he preferred. No appeal was taken from the action of the board of supervisors; but, after the election and the order of removal, Mr. Hinton filed his bill for, and obtained, an injunction against any further action toward removal. This injunction was dissolved, and three hundrded dollars allowed as damages as attorney's fees, and he appeals. *Robinson, et al.* v. *Board of Supervisors, Itawamba County,* 105 Miss. 90.

Counsel for appellants, on the bottom of page five of his statement of facts and brief, says: "We come next to the most vital point in this case. Did the board of supervisors abuse their discretion, and act within the scope of their authority?" and he relies on the case of *Weston* v. *Hancock County,* 98 Miss. 800, 54 So. 307, and I agree with him that this court held in that case when he says in his brief." This court distinctly held in this case that the tax-payers have until the first Monday to file their petition." But I do not agree with him that this case attempted to hold or held that the petition could be filed on the first Monday after the board, met for business. There is a difference between "on" and "until," and also between "at" and "until." This court in that case among other things did say:

"When the board has published the notice required by section 333 of its intention to issue the bonds of the county for the purpose named in section 331 for three weeks next preceding any meeting of the board, without protest, within that time, of ten per cent, of the adult taxpayers exclusive of those who pay poll tax only, jurisdiction is acquired by the board to issue the bonds at the first meeting or any subsequent meeting

of the board, as the discretion of the board may dictate and jurisdiction is not lost by the failure to act immediately." "So far as the tax-payer is concerned, when he fails to protest, (within the three weeks of publication next preceding the meeting of the board at which they are to issue the bonds), the bonds then have a potential existence beyond revocation so far as he is concerned." The statement in parentheses is mine.

While the record does not show what per cent of the property in the district is owned by appellants, learned counsel makes the broad statement of fact that they own "practically all of the land in the district, except in the little town composed of saw-mill owners and its employees." The tax rolls and records of the county will show that they do not own two per cent of the property in the district, and although they have children to educate, they will not have to pay two per cent of the taxes to pay for these bonds. These statements are outside the record and will not be noticed by this court.

Etheridge, J., delivered the opinion of the court.

The county school board of Covington county on petition of the qualified electors of the Sanford consolidated school district established a consolidated school known as the Sanford Consolidated School in said county; and there was a petition filed with the board of supervisors signed by a majority of the qualified electors of said district praying for the issuance of fifteen thousand dollars of bonds of the said school district to build and equip a school building for said district, and at the June meeting, 1916, the board of supervisors gave notice of its intention to issue the bonds as prayed for, and the same was published in four issues of the county paper notifying the inhabitants of the district that the board proposed to issue the bonds as prayed for. On the first

115 Miss.—9

Monday of July a petition in the following words was. filed with the board of supervisors:

"To the Honorable Board of Supervisors of Covington County: We, the undersigned, citizens, voters, taxpayers, having learned of your intention to float bonds for the purpose of building and making a certain school located at Sanford in said county, and we being each of us in said Sanford district, do hereby petition your honorable board to submit same to the voters of said district for their approval or rejection."

This petition was signed by more than twenty per cent. of the qualified voters in the said district, many of the names appearing on the original petition appearing also on this petition. On the first Monday of July, before the convening of the board of supervisors, these last-named petitioners held a conference with an attorney and employed him to present the petition on their behalf. The attorney advised the petitioners that the petition was probably insufficient in its verbiage to comply with the law, but suggested that he would try to get it amended before the board and ask all present who were opposed to having it amended to speak out. There was general approval by those present, some thirty-five to fifty citizens, and none of them objected. The petition was filed without amendment on the said Monday and it did not come up before the board of supervisors until Wednesday, July 5th, when the attorney representing the petitioners appeared before the board and asked leave to amend the petition to conform to the statute. There was some discussion of the question by the attorney in favor and by the attorney opposed to this petition, one contending that the amendment could be made, and the other that it could not be made, and the board of supervisors sent for the district attorney of the district, who was then at the courthouse engaged in circuit court, and asked his advice as to whether the amendment could be made, an dwas advised by the district at-

torney that in his opinion the amendment could not be made. The matter appears to have been dropped, as no motion to allow the amendment was made by any person, and the board adjudged the petition insufficient, and proceeded to issue the bonds as prayed for in the original petition. There was no appeal from the order of the board to the circuit court, then in session, but on the 10th day of July, the appellants, who are petitioners to have the bond issue submitted to an election, filed a bill in the chancery court praying an injunction to restrain the issuance of the bonds making the appellees and others defendants. The bill for injunction alleged unlawful, fraudulent, and illegal acts on the part of the board of supervisors in issuing the bonds. The writ of injunction was granted by the chancellor on the 11th of July, and on the 24th an amended bill was filed, which amended bill was demurred to, demurrer sustained, and another amendment allowed, which amended bill was also demurred to, and demurrer overruled. Thereupon an answer was filed and a motion to dissolve made, and the cause came on for hearing on bill, answer, motion to dissolve, and evidence taken in open court. The chancellor on this hearing dissolved the injunction and dismissed the bill, and the appellants appeal. The bill in this suit attacked not only the proceedings before the board of supervisors, but also attacked the constitutionality of the statute pertaining to consolidated schools on the ground that the statute was unconstitutional: First, because the title of the statute was insufficient; second, because chapter 255, Acts of 1912, amending chapter 124, Acts of 1910, so changed the scope and purpose of the law as to be in conflict with section 60 of the Constitution; and, third, that the order creating the consolidated school did not provide for the maintaining of a colored school, and that there were colored people in the district, some of whom were complainants in the bill opposed to the creation of said school and to the issu-

ance of said bonds. It was also alleged and proven that after the board created the consolidated school district there was a petition filed with the school board signed by a majority of the electors of the district asking the board to rescind its action, which the school board declined to do. In so far as the constitutionality of the act is concerned, we think that this court settled the constitutionality of the consolidated school law in the case of *Bufkin* v. *Mitchell,* 106 Miss. 253, 63 So. 458, 50 L. R. A. (N. S.) 428. In so far as the attack on the constitutionality of the law because of the title of the act both of 1912 and the 1916 act (Laws 1916, chapter 180), this contention is settled adversely to the appellants in the case of *Lang* v. *Board of Supervisors of Harrison County,* 75 So. 126, and authorities therein cited.

The act is not in conflict with the state or federal Constitution, because under the law the board has the same power to create consolidated schools for the colored race that it has for the white race, and is not analogous to the case of *McFarland* v. *Goins,* 96 Miss. 67, 50 So. 493. In said case the act creating the agricultural high school in 1908 provided in its terms that such school could only be created for members of the white race, and for this reason was a discrimination against the citizens of the colored race who would have to be taxed for the support of a school which they could not attend. Under the present act the board of supervisors and county school board may create consolidated school districts for either the white race, the colored race, or for both according to the necessities of local conditions; and the fact that a district is created for one race alone is not in conflict with any constitutional provision. Our general statutes authorize the school board of establish separate schools for the white and colored races in each county. A consolidated school might be desirable and necessary for one race, while there might be so few

members of the other race as to make it both unnecessary and undesirable.

A consolidated school district is simply a common school district where two or more existing schools have been consolidated into one single school district.

The bill in this case does not, however, properly present the question, because it is not alleged that there is sufficient colored children to maintain a public school, and, second, it does not allege that there is no colored school located in the territory comprising the district whereat the colored children may be educated in the same subjects taught in the consolidated school. There is therefore no merit in the attack on the constitutionality of the law.

We think the petition presented to the board of supervisors, claimed to be against the issuance of the bonds, is not in fact a petition against the issuance of the bonds. It is merely a petition requesting the board to submit the question of the issuance of bonds to the people for approval or rejection. Any party could sign this petition without committing himself in any way as being for or against the proposed issue. Those in favor of the bond issue might sign this petition is quickly and readily as those against it. Doubtless many names which were appended to this petition would have voted for the bond issue because it appears that they had signed the petition for the bond issue and for the school. Most people are willing to submit questions of this kind to an election and to be governed by the result of the election regardless of their individual views. The board of supervisors' right to order an election at the expense of the taxpayers of the county depends upon the compliance with the law on that subject, and it has no right to hold an election at the expense of the public merely to gratify the wish of the people. It must be made manifest to the board that there are twenty per cent. of the electors who really oppose the issuance of the bonds,

and this petition did not indicate that twenty per cent. or any other number of citizens were opposed to the bond issue.

We think the board was right in refusing to allow an amendment to the petition after the first Monday in July and in the absence of the petitioners. The petition could not be amended without the consent of the parties who signed it, and it does not appear that twenty per cent. of the qualified electors and taxpayers of the district consented to such amendment.

The judgment of the chancellor is therefore affirmed.

*Affirmed.*